## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

TERRANCE E. MITCHELL                                   CIVIL ACTION

VERSUS                                                 NO. 13-4963

JEFFERSON PARISH                                       SECTION "I"(3)
CORRECTIONAL CENTER, ET AL.

## REPORT AND RECOMMENDATION

Plaintiff, Terrance E. Mitchell, a state inmate, filed this civil action pursuant to 42 U.S.C. § 1983.  He named as defendants the Jefferson Parish Correctional Center and the Jefferson Parish Sheriff's Office.  In his complaint, plaintiff claimed that he had been falsely arrested, defamed, subjected to double jeopardy, and confined in unconstitutional conditions at the Jefferson Parish Correctional Center.  In order to better understand the factual basis of those claims, the Court held a Spears hearing on August 7, 2013.  See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).[1]  Based on plaintiff's complaint and Spears hearing testimony, the Court finds that he is making the following allegations.

On February 27, 2013, plaintiff was arrested on a variety of criminal charges by an officer from the Jefferson Parish Sheriff's Office.  While detained on those charges, plaintiff was accused of a disciplinary violation involving obscenity, found guilty of that charge in an administrative

---

[1] "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998).  The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement.  Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).  Spears hearing testimony becomes a part of the total filing by the *pro se* applicant.  Id.

proceeding at the jail, and placed in the lockdown dorm for thirty days.  However, in addition to the disciplinary charge, plaintiff was charged with a criminal offense based on the same conduct.

At the time of the <u>Spears</u> hearing, plaintiff was represented by court-appointed counsel and awaiting trial on all criminal charges.  However, since that hearing, plaintiff entered into a plea agreement and pleaded guilty under <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970),[2] to charges arising from both the February 27 arrest and the incident at the jail.[3]

In connection with the foregoing charges, plaintiff alleged that the defendants "slander[ed] and insulted[ed] [his] name and character over the newspaper."[4]

Plaintuff also claimed that the conditions on the lockdown dorm at the Jefferson Parish Correctional Center were unconstitutional.  Specifically, he challenged the following conditions:

1.   Food:  The food trays in the lockdown dorm were approximately three times smaller than the trays used in the regular dorms.  When plaintiff asked why the trays were smaller, he was told that the regular trays would not fit through the cell gates; however, plaintiff alleged that was untrue.  Plaintiff acknowledged that the lockdown inmates were served the same meals as the regular inmates and that prison official contended that the portion sizes were

---

[2] "An <u>Alford</u> plea allows a defendant to plead guilty while maintaining his factual innocence." <u>United States v. Flores-Vasquez</u>, 641 F.3d 667, 671 n.3 (5th Cir. 2011).

[3] The information on the disposition of the charges was obtained by the undersigned's staff in a telephone call to the Criminal Clerk for Division A of the Louisiana Twenty-Fourth Judicial District Court on August 27, 2013.

[4] Rec. Doc. 3, p. 5.

the same; however, he alleged that contention was also untrue and that the portions were actually smaller.

2.      Sanitation:  The lockdown dorm was nasty and the shower stall had mold. Plaintiff acknowledged that the showers were pressure-washed with bleach once per month.

3.      Hygiene products:  Lockdown inmates were allowed only limited hygiene products (essentially only three bars of soap per week), with guards confiscating other products as contraband.

4.      Telephone calls:  Lockdown inmates were not allowed telephone calls; however, they were allowed to send and receive mail.

5.      Outside recreation:  Lockdown inmates were not allowed access to the outside for fresh air and sunshine; however, plaintiff acknowledged that lockdown inmates were allowed one hour per day in the "day room" where there was sufficient space to exercise.

6.      Other restrictions:  While on lockdown, plaintiff was also denied access to the television and the law library, could not receive visits from family, and could not place commissary orders.

At the time of the Spears hearing, plaintiff had completed his disciplinary sentence and was no longer on the lockdown dorm.

## I.  Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).[5]   Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

---

[5] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim upon which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

Although broadly construing plaintiff's complaint and his Spears hearing testimony,[6] the undersigned recommends that, for the following reasons, plaintiff's claims against the Jefferson Parish Correctional Center and the Jefferson Parish Sheriff's Office be dismissed as frivolous and/or failure to state a claim upon which relief may be granted.

## II.  Improper Defendants

The only defendants named in this lawsuit are the Jefferson Parish Correctional Center and the Jefferson Parish Sheriff's Office.  However, neither of those entities is a proper defendant.

---

[6] The court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

The Jefferson Parish Correctional Center is merely a building, not a "person" subject to suit under 42 U.S.C. § 1983.  James v. Jefferson Parish Correctional Center, Civ. Action No. 07-4231, 2008 WL 1927399, at *2 (E.D. La. Apr. 30, 2008); see also Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *4 (E.D. La. Aug. 1, 2007); Martinez v. Larpenter, Civ. Action No. 05-874, 2005 WL 3549524, at *5 (E.D. La. Nov. 1, 2005); Cullen v. DuPage County, No. 99-C-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); Whitley v. Westchester County Correctional Facility Administration, No. 99-CIV-0420(SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (E.D. Pa. 1976).

The Jefferson Parish Sheriff's Office is likewise an improper defendant, in that "a sheriff's office is not a legal entity capable of being sued...." Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 283 (5th Cir. 2002); see also Francois v. Jefferson Parish Sheriff's Office, Civ. Action No. 12-1965, 2013 WL 654640, at *6 (E.D. La. Feb. 21, 2013) ("Louisiana law has not afforded any legal status to parish sheriff's departments such that they can be sued."); Campbell v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-3143, 2009 WL 1107251, at *1 (E.D. La. Apr. 23, 2009); Wetzel v. St. Tammany Parish Jail, 610 F. Supp. 2d 545, 548 (E.D. La.2009); Smith v. St. Tammany Parish Sheriff's Office, Civ. Action No. 07-3525, 2008 WL 347801, at *2 (E.D. La. Feb. 6, 2008); Causey v. Parish of Tangipahoa, 167 F. Supp. 2d 898, 904 (E.D. La. 2001); Ruggiero v. Litchfield, 700 F. Supp. 863, 865 (M.D. La. 1988).

Nevertheless, this Court need not afford plaintiff an opportunity to amend his complaint to name a proper defendant because, for the following reasons, he would not be entitled to relief even if a proper defendant had been named.

### III.  Plaintiff's Claims

### A.  Claims Relating to Arrest and Prosecution

To the extent that plaintiff is claiming that (1) he was falsely arrested with respect to either the incident on February 27 or the incident at the jail, (2) he was defamed in connection with the arrest(s), and/or (3) his criminal prosecution for the incident at the jail constituted double jeopardy, those claims would be barred by Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the United States Supreme Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Id. at 486-87 (footnote omitted).  Heck has since been extended also to bar claims for declaratory and injunctive relief.  See, e.g., Walton v. Parish of LaSalle, 258 Fed. App'x 633, 633-34 (5th Cir. 2007); Collins v. Ainsworth, 177 Fed. App'x 377, 379 (5th Cir. 2005); Shaw v. Harris, 116 Fed.

App'x 499, 500 (5th Cir. 2004).  Claims barred by <u>Heck</u> are legally frivolous.  <u>Hamilton v. Lyons</u>, 74 F.3d 99, 102 (5th Cir. 1996).

In that plaintiff's current claims protesting his innocence directly conflict with the guilty pleas and convictions resulting from his arrests, a judgment in his favor in this federal Court would necessarily imply the invalidity of those state court convictions.[7]  Therefore, <u>Heck</u> would bar his false arrest claims until such time as he obtained a favorable disposition on the charges for which he was arrested and currently stands convicted.  <u>See</u> <u>Walter v. Horseshoe Entertainment</u>, 483 Fed. App'x 884, 887 (5th Cir. 2012) ("In order to support a claim for unlawful arrest, a plaintiff must show that he was arrested without probable cause. Here, the plaintiffs were arrested for crimes of which they were ultimately convicted.  <u>Heck</u> therefore bars recovery for the false arrest claim, because the conviction necessarily implies that there was probable cause for the arrest." (citation omitted)); <u>see also</u> <u>Queen v. Purser</u>, 109 Fed. App'x 659, 660 (5th Cir. 2004); <u>Wells v. Bonner</u>, 45 F.3d 90, 95 (5th Cir. 1995); <u>Birgans v. Louisiana</u>, Civ. Action No. 09-0926, 2010 WL 2428026, at *2-4 (W.D. La. Apr. 26, 2010), <u>adopted</u>, 2010 WL 2485958 (W.D. La. June 10, 2010), <u>appeal dismissed</u>, 411 Fed. App'x 717 (5th Cir. 2011); <u>Landor v. Hogue</u>, Civ. Action No. 07-9171, 2008 WL 243950, at *3 (E.D. La. Jan. 25, 2008).  <u>Heck</u> would also bar plaintiff's related defamation claim.  <u>Cormier v. Lafayette City-Parish Consolidated Government</u>, 493 Fed. App'x 578, 584 (5th Cir. 2012).  His double jeopardy claim would likewise be barred by <u>Heck</u>.  <u>Miley v. Rylander</u>, No.

---

[7] The fact that plaintiff entered <u>Alford</u> pleas would not affect the <u>Heck</u> bar.  Because federal courts "view an <u>Alford</u> plea as nothing more than a variation of an ordinary guilty plea," the United States Fifth Circuit Court of Appeals has held that "a conviction based on an <u>Alford</u> plea can be used to impose <u>Heck</u>'s favorable termination rule."  <u>Ballard v. Burton</u>, 444 F.3d 391, 397 (5th Cir. 2006).

8

99-50884, 2000 WL 293895 (5th Cir. Feb. 16, 2000); Robinson v. Dallas County, Texas, No. 96-10081, 1996 WL 254953 (5th Cir. Apr. 17, 1996).[8]

### B.  Claims Relating to the Conditions of Confinement

Petitioner also complained that the conditions of confinement on the lockdown dorm at the Jefferson Parish Correctional Center were restrictive and harsh; however, that was the point.  In order to maintain discipline and deter future misconduct, prison officials are clearly allowed to impose unfavorable conditions of confinement on those who have been found guilty of violating prison rules.  See Daigre v. Maggio, 719 F.2d 1310, 1312 (5th Cir. 1983) ("We recognize that isolation is punitive, that prisoners so confined have demonstrated their defiance of prison rules, and that deprivations beyond those imposed on the general prison population is the very essence of internal prison discipline.").[9]  While a prison official's discretion on such matters is, of course, not unfettered, a degree of deference should be accorded to the manner in which that discretion is exercised.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions.  Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution

---

[8] In any event, plaintiff's underlying double jeopardy claim is facially frivolous.  He contends that the Double Jeopardy Clause prohibits him from being charged with a criminal offense based on the same conduct for which he was already punished in the jail disciplinary proceeding.  It clearly does not.  United States v. Galan, 82 F.3d 639, 640 (5th Cir. 1996); see also United States v. Shepard, 78 Fed. App'x 387, 388 (5th Cir. 2003).

[9]  The Court notes that the fact that plaintiff was a pretrial detainee at the time he was placed in lockdown is of no significance.  Pretrial detainees, like all inmates, may be disciplined when they break the institution's rules.  See, e.g., Decraene v. United States, Civ. Action No. 97-3190, 1999 WL 246708, at *3 (E.D. La. 1999).

of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); Royal v. Clark, 447 F.2d 501, 501-02 (5th Cir. 1971) ("Federal Courts will not interfere in the administration of prisons absent an abuse of the wide discretion allowed prison officials in maintaining order and discipline." (citations omitted)). Therefore, an inmate's rights are violated only if the conditions imposed for disciplinary infractions were so harsh or restrictive as to independently be unconstitutional.  For the following reasons, the conditions alleged by plaintiff do not cross that impermissible line.

### 1.  Food

Plaintiff first complained about the food served in the lockdown dorm.  Although he conceded that the lockdown inmates were served the same meals as the regular inmates, he alleged the portions were smaller.  Although he stated that the prison officials falsely contended that the portion sizes were the same despite the smaller trays, a difference in portion sizes would not alone amount to a constitutional violation even if there was in fact a discrepancy.  Differences in meals simply are not determinative.  See Trapp v. Scott, No. 96-40338, 1996 WL 512221 (5th Cir. Aug. 28, 1996) ("[B]eing served sandwiches in lieu of regular meals during administrative segregation does not amount to a constitutional violation."); see also Adeleke v. Heaton, 352 Fed. App'x 904, 908 (5th Cir. 2009).

To meet its constitutional responsibilities, a prison need only offer meals that are sufficiently nutritious to maintain an inmate's health.  See Green v. Ferrell, 801 F.2d 765, 770 (5th Cir. 1986). Therefore, for a claim such as this to be cognizable, the inmate must be able to show that the portion sizes or calories he was served on a daily basis were so inadequate as to deny him the minimal

civilized measure of life's necessities.  McClure v. Texas Department of Criminal Justice Corrections Department, 459 Fed. App'x 348, 351 (5th Cir. 2012); see also Talib v. Gilley, 138 F.3d 211, 214 n.3 (5th Cir. 1998).  There is no indication that the lockdown meals were deficient to that degree.

## 2.  Sanitation

Plaintiff's next claim that the lockdown dorm and showers were nasty likewise has no merit. Admittedly, there is a point beyond which a prison's conditions are so unsanitary as to render them unconstitutional.  See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004).  However, the conditions alleged by plaintiff simply did not rise to that level.  Further, in addition to plaintiff's concession at the Spears hearing that the showers were pressure-washed with bleach once per month, the Court notes that, in any event, the mere fact that there was mold, mildew, or soap scum in the showers would not warrant relief.  See, e.g., Sneeze v. Terrebonne Parish Sheriff's Office, Civ. Action No. 11-987, 2011 WL 2413464, at *3 (E.D. La. May 9, 2011), adopted, 2011 WL 2311867 (E.D. La. June 10, 2011); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").  Simply put:  although prisons should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); see also Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious

conditions."); <u>Wilson v. Lynaugh</u>, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (noting that the Constitution does not protect prisoners from "discomfort and inconvenience" and that prisoners "cannot expect the amenities, conveniences, and services of a good hotel").

### 3. Hygiene Products

Plaintiff also complained that lockdown inmates were allowed only limited hygiene products and that other such products were confiscated as contraband. The practice of limiting hygiene products as a form of discipline is neither uncommon nor unconstitutional, so long as the inmate is not deprived of the basic elements of hygiene on a minimal level. See <u>Daigre v. Maggio</u>, 719 F.2d 1310, 1312 (5th Cir. 1983) (finding that it was not unconstitutional to prohibit lockdown inmates from possessing soap and towels where they were allowed to shower with soap in the mornings and their cells had running water); <u>see also</u> <u>Matthews v. Murphy</u>, No. 90-35458, 1992 WL 33902, at *4 (9th Cir. Feb. 25, 1992) (no constitutional violation where inmate was deprived of towel, toothbrush, toothpowder, comb, soap, or other personal hygiene items for approximately thirty-four days); <u>Brown v. Cockrell</u>, No. 3:01-CV-1090, 2002 WL 638584, at *3 (N.D. Tex. Apr. 17, 2002) (prohibition of deodorant, lotion, and hair conditioner on lockdown did not trigger constitutional protections). Here, plaintiff acknowledged that lockdown inmates were provided three bars of soap per week, and the temporary prohibition on other items simply did not rise to the level of constitutional deprivations.

### 4. Telephone Calls

Plaintiff next complained that lockdown inmates were not allowed telephone privileges. However, the temporary denial of such privileges as a form of discipline is common and does not

violate the Constitution, especially where, as was the case here, the inmate was able to communicate with the outside world through other means, such as by mail.  See, e.g., Ellis v. Hargrove, 75 Fed. App'x 229, 230 (5th Cir. 2003); McGrew v. Vannoy, Civ. Action No. 10-0538, 2011 WL 2882603, at *3 (M.D. La. May 10, 2011), adopted, 2011 WL 2937978 (M.D. La. July 15, 2011).

## 5.  Outside Recreation

Plaintiff also complained that he was afforded virtually no opportunity for outside recreation while on lockdown.  Even if that is true, that was not an atypical, significant deprivation in a prison setting, and it did not rise to the level of a constitutional violation.  See Argue v. Hofmeyer, 80 Fed. App'x 427, 429-30 (6th Cir. 2003); Francis v. Kaylo, Civ. Action No. 03-0439, 2006 WL 1581090 (W.D. La. June 5, 2006) ("[Prisoner's] contention that he was deprived of outdoor exercise does not state a due process claim, nor does he have a liberty interest in outdoor recreation.").  Severe restrictions on or even complete denials of outdoor recreation have been found to be constitutional, at least where, as here, the inmate had the ability to exercise indoors.  See, e.g., Wilkerson v. Maggio, 703 F.2d 909, 911-12 (5th Cir. 1983) (finding no violation where an inmate was not permitted outdoor exercise for a period of five years, but was allowed one hour daily outside his cell to exercise in any manner he desired); Chavis v. Fairman, No. 92-C-7490, 1994 WL 55719, at *5 (N.D. Ill. Feb. 22, 1994) ("Generally, even dramatic restrictions on outdoor exercise do not violate the Eighth Amendment (or due process, where pretrial detainees are at issue) so long as prisoners have ample opportunity to enjoy indoor activity."), aff'd, 51 F.3d 275 (7th Cir. 1995); Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *9 (E.D. La. May 11, 2010) ("[A]n inmate has no constitutional right to out-of-cell exercise if he has enough room to exercise in his cell and

13

suffers no ill effects from the restrictions."); Broussard v. Phelps, Civil Action No. 86-2126, 1987 WL 18153, at *3 (E.D. La. Oct. 6, 1987) (no constitutional deprivation shown where prisoner was allowed outdoor recreation only twice in a seventeen month period in light of the fact that he was allowed to leave his cell for an hour each day and cell was large enough for exercise). Therefore, this claim has no merit.

### 6.  Other Restrictions

Lastly, the additional temporary restrictions placed on plaintiff while he was in lockdown, i.e. denial of television, law library access, family visits, and commissary privileges, also did not rise to the level of constitutional deprivations.  The denial of television as a form of discipline is both common and constitutional.  See, e.g., Farr v. Rodriguez, 255 Fed. App'x 925, 926 (5th Cir. 2007); McClure v. Thaler, Civ. Action No. 5:11cv180, 2012 WL 2885767, at *1 (E.D. Tex. May 31, 2012), adopted, 2012 WL 2885727 (E.D. Tex. July 13, 2012); Tyson v. LeBlanc, Civ. Action No. 10-1174, 2010 WL 5375955, at *11-13 (E.D. La. Nov. 19, 2010), adopted, 2010 WL 5376330 (E.D. La. Dec. 15, 2010), aff'd, 431 Fed. App'x 371 (5th Cir. 2011).  The same is true of the temporary denial of visitation privileges.  Palmisano v. Bureau of Prisons, 258 Fed. App'x 646, 648 (5th Cir. 2007); Adeleke v. Heaton, 352 Fed. App'x 904, 908 (5th Cir. 2009); King v. Sims, Civ. Action No. 2:07cv136, 2009 WL 2497154, at *5 (S.D. Miss. Aug. 14, 2009); see also Overton v. Bazzetta, 539 U.S. 126, 137 (2003) ("Michigan, like many other States, uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline.  This is not a dramatic departure from accepted standards for conditions of confinement. Nor does the regulation create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or

safety.  Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that

it might occur." (citation omitted)).  The same is also true of the temporary denial of commissary

privileges.  Palmisano, 258 Fed. App'x at 648; Gardner v. Thompkins, 464 F.2d 1031 (5th Cir. 1972)

(denial of canteen privileges was not of "constitutional significance"); King, 2009 WL 2497154, at

*5; Brown v. Cockrell, No. 3:01-CV-1090, 2002 WL 638584, at *3 (N.D. Tex. Apr. 17, 2002).

As to plaintiff's claim that he did not have access to the jail law library while in lockdown,

it is clear that such access "may be narrowed without constitutional difficulty" for reasons of

discipline or security.  Eason v. Thaler, 14 F.3d 8, 9 (5th Cir. 1994).  That said, even lockdown

inmates retain a constitutional right to access to the courts and so, depending on the circumstances,

the deprivation might be unconstitutional *if* the inmate "was pursuing a legal action which made the

use of a law library necessary and all access was nonetheless denied."  Id. at 9-10.  However,

plaintiff had no need for law library access because his constitutional right of access to the courts

was protected by alternative means, i.e. the provision of appointed counsel.

The United States Supreme Court has held that the constitutional right of access to the courts

does not encompass "an abstract, freestanding right to a law library or legal assistance" in prison.

See Lewis v. Casey, 518 U.S. 343, 351 (1996).  On the contrary, the right can be met in other ways,

including by the provision of counsel.  See Degrate v. Godwin, 84 F.3d 768 (5th Cir. 1996); see also

Dickinson v. TX, Fort Bend County, 325 Fed. App'x 389, 390 (5th Cir. 2009) ("Because Dickinson

had court-appointed counsel to represent him, he did not have a constitutional right of access to a

law library to prepare his criminal defense."); Ashcraft v. Cameron County, No. 97-41219, 1998 WL

611201, at *3 (5th Cir. Aug. 17, 1998) ("A criminal defendant cannot complain that he was denied

15

access to the courts while represented by counsel."); <u>Ford v. Foti</u>, No. 94-30614, 1995 WL 241811, at *3 (5th Cir. Apr. 14, 1995) ("A criminal defendant who is represented by counsel has meaningful access to the courts vis-a-vis the criminal action pending against him."); <u>Childs v. Scott</u>, No. 94-60723, 1995 WL 153057 (5th Cir. Mar. 22, 1995) ("If a criminal defendant is represented by counsel, he has constitutionally sufficient access to the courts."); <u>Webb v. Havins</u>, No. 93-1452, 1994 WL 286151, at *3 (5th Cir. June 13, 1994); <u>Crockett v. Carpenter</u>, No. 93-1480, 1994 WL 144645, at *3 (5th Cir. Apr. 5, 1994).[10]

As noted, plaintiff testified at the <u>Spears</u> hearing that he was represented by appointed counsel in his state criminal proceedings.  Accordingly, he suffered no prejudice as a result of being denied access to the law library while in lockdown, and he therefore does not have a colorable access-to-courts claim.  <u>See</u> <u>Ahmad v. Ortiz</u>, No. 94-50196, 1994 WL 733500, at *3 (5th Cir. Dec. 27, 1994) (to allege a constitutional violation, a lockdown prisoner with restricted access to the law library "must show that the purported denial of access somehow prejudiced his position as a litigant").

_____

[10] The Court expressly notes that the foregoing result is not changed even if plaintiff had wanted to perform his own legal research to assist his counsel.   The right at issue simply does not extend that far.  <u>See, e.g.</u>, <u>Caraballo v. Federal Bureau of Prisons</u>, 124 Fed. App'x 284, 285 (5th Cir. 2005) ("Caraballo also asserts that he was denied meaningful access to the courts because he was unable to assist his attorney during his direct appeal by conducting legal research.  Because Caraballo had court-appointed counsel on appeal, he had no constitutional right of access to a law library in preparing his defense, and Caraballo failed to state a claim for which relief may be granted."); <u>Boyd v. Nowack</u>, Civ. Action No. 09-7639, 2010 WL 892995, at *3 (E.D. La. Mar. 11, 2010) ("Because plaintiff is currently represented, he has no valid access-to-courts claim with respect to his criminal proceeding, even if he would like to 'assist' his attorney."); <u>cf.</u> <u>Prather v. Anderson</u>, No. Civ. A. H-05-2964, 2005 WL 2277528, at *2 (S.D. Tex. Aug. 31, 2005) ("It is well established ... that a criminal defendant has no constitutional right to hybrid representation ....").

For all of the foregoing reasons, even if plaintiff had named a proper defendant, *which he has not*, all of his underlying claims would still be subject to dismissal as frivolous and/or failure to state a claim upon which relief may be granted.

### RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's claims against the Jefferson Parish Correctional Center and the Jefferson Parish Sheriff's Office be **DISMISSED WITH PREJUDICE** as frivolous and/or failure to state a claim upon which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[11]

New Orleans, Louisiana, this twenty-first day of October, 2013.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.